ARMSTRONG *v.* BINZER.

[No. 15,143. Filed February 17, 1936. Rehearing denied May 14, 1936. Transfer denied October 1, 1936.]

498

*Miller & Causey, Samuel B. Davis* and *Hays & Hays,* for appellant.

*George W. Wells* and *Charles H. Bedwell,* for appellee.

BRIDWELL, J.—Appellee was injured while riding as a guest of appellant in an automobile operated by him, and brought this action against appellant to recover damages because of said injuries. The complaint is in two paragraphs, each based on the theory that the conduct of appellant in the driving of said automobile in the manner he did drive it, and under the conditions existing at the time of the accident, was in reckless disregard of appellee's rights. A demurrer, challenging the sufficiency of each paragraph of complaint on the ground that facts sufficient to constitute a cause of action were

not stated, was filed and overruled, and an exception reserved by appellant. The issues were closed by an answer of general denial. The cause was submitted to a jury for trial, and there was a verdict in favor of appellee for $2,500. In addition to the general verdict, the jury returned its answers to interrogatories submitted to it to be answered if a general verdict was returned. Thereafter, and in due course, appellant filed motion for judgment in his favor on answers to the interrogatories, and motion for a new trial. Each motion was overruled, and appellant excepted to each of said rulings. Judgment was rendered on the verdict, and this appeal perfected, appellant assigning as errors the overruling of the demurrer to each paragraph of the complaint; the overruling of the motion for judgment on the answers to the interrogatories; and the overruling of the motion for a new trial. The motion for a new trial asserts as causes therefor, that the court erred in the giving of certain instructions to the jury; in refusing to give certain instructions tendered by appellant; "in refusing to sustain defendant's motion for a directed verdict for defendant at the close of plaintiff's evidence"; "in overruling defendant's motion for a directed verdict for the defendant at the close of all the evidence in this cause"; in overruling defendant's motion for judgment in his favor on the answers to the interrogatories given by the jury for the reason that said answers are in irreconcilable conflict with the general verdict; that the verdict of the jury is not sustained by sufficient evidence; and, that the verdict of the jury is contrary to law.

The paragraphs of the complaint are not essentially different in their allegations. One paragraph pleads the facts charged to be in reckless disregard of plaintiff's rights somewhat more in detail than does the other, but both proceed upon the same theory. That part of the

second paragraph pleading the facts necessary to be considered in determining whether a cause of action is stated, is as follows:

"The plaintiff, for a second paragraph of complaint herein, complains of the defendant and says, that on July 19, 1932, at about 7 o'clock P. M., plaintiff with her two sisters were riding without paying fare, in an automobile owned and driven by defendant, Harry D. Armstrong, going south on State Road 157, between Clay City and Coal City, Indiana, when the defendant drove said automobile plaintiff was riding in off said public highway to his left, and into a ditch on the left side of said highway, and continued to drive in said ditch which was rough and uneven and about 4 feet deep in places, for a distance of about ninety (90) to one hundred (100) feet and drove over a wire fence and to the left of a concrete culvert, and off said highway down into said ditch and thereby permanently injured plaintiff.

"That said Highway No. 157 was a public highway running north and south, and was about 14 feet wide at said place, and there was a narrow concrete culvert across said highway where plaintiff was injured.. Said highway at said place was straight for a distance of about one-half mile in each direction; said highway sloped down grade slightly from the north as it approached said place and said concrete culvert for a distance of about 150 yards; there was fresh, loose, rock and gravel on said highway at said place, and said highway was narrow and the traveled portion thereof was about 14 feet wide, with ditches on each side sloping abruptly down from the traveled part of said highway to a depth of about 18 inches to 4 feet extending along said highway on each side thereof at said place for a distance of about two hundred feet in each direction from said concrete culvert. Said concrete culvert had concrete abutments on each side about three feet high, which culvert was about 14 feet wide; there was a wire fence and posts on the east side of said highway at said place about 4 to 6 feet from the traveled part of said highway extending for one-half mile in each direction from said culvert.

"That defendant had lived prior to this accident in Coal City for a number of years, near the place of accident, and defendant frequently passed over this highway and was familiar with said highway on said date and the conditions at said place. At the time of said injury to plaintiff it was not yet dark, and the weather was clear and warm, and defendant had not turned on his lights, and said highway and the conditions at said place were plainly visible to defendant, and there were no other automobiles passing on said highway at said time and place where plaintiff was injured as herein alleged.

"That on said date of July 19, 1932, this plaintiff while riding in defendant's automobile was permanently injured as a proximate result of the reckless disregard of plaintiff's rights in the driving and conduct of the defendant in this; that on said date at about 7 o'clock P. M. and before sunset, defendant was driving his automobile on said highway at said place at a speed of about 40 miles per hour, with plaintiff and her sisters riding therein, going south on said highway and approaching said concrete culvert, and following a coal truck which was going south on said highway at a speed of about 40 miles an hour, where said highway was so narrow with loose rock and gravel thereon, as aforesaid, when the defendant started to turn his automobile to the left to go around said truck he was following, when this plaintiff and her sisters asked defendant not to drive so fast, and to slow down his speed, and asked defendant not to pass said truck at said place; that defendant refused to listen to plaintiff and her sisters and refused to slow down his speed as requested; that plaintiff then asked defendant to allow her to get out of said automobile and walk, which defendant refused to do; that defendant then and there, over the protest and objection of plaintiff and her sisters, and with a reckless disregard of plaintiff's rights refused to slow down the speed of his automobile, and refused to stop and let plaintiff out, but on the contrary defendant speeded up his automobile, and started to go around said truck he was following at said place, where said highway was so narrow with ditches on each side and with loose rock and

gravel thereon, and where there was a narrow concrete culvert with concrete abutments on each end as aforesaid, and where there was not sufficient space for defendant to safely pass said truck on said highway; and defendant then and there with a reckless disregard of plaintiff's rights, speeded up his automobile and turned to his left on said highway, and drove off of said highway to his left, and to the east down into a ditch where said ditch was about 1½ feet to four feet deep; and defendant with a reckless disregard of plaintiff's rights, continued over the objections and protest of plaintiff to drive in said ditch where it was rough and uneven for a distance of about 45 feet to where said ditch was about 4 feet deep; and defendant with a reckless disregard of plaintiff's rights continued to drive in said ditch to the left and east of said concrete culvert, and drove over a wire fence and posts of said fence, with plaintiff and her sisters in said car, over their protest and objections, and refused to stop and allow them to get out of said car, and defendant continued to drive in said ditch for a distance of about 90 to 100 feet, where said ditch was rough, uneven and about 4 feet deep, and thereby permanently injured plaintiff in this: broke her left leg, and split the bone from the knee down, and bruised and sprained the muscles and ligaments in her left leg and knee, bruised her limbs and body, and shocked her nervous system, and thereby rendered her a permanent cripple for life. That all of said injuries to plaintiff are permanent, and all of said injuries were the proximate result of the reckless disregard of plaintiff's rights as aforesaid."

Appellant contends that his demurrer to each paragraph of the complaint should have been sustained, asserting that the facts charged show that defendant (appellant) was guilty of no more "than mere negligence"; that the acts charged show "only momentary thoughtlessness, or mere inadvertence, or an error of judgment, and do not indicate a reckless disregard of the rights of plaintiff."

In passing upon this question we must keep in mind

the provisions of our "Guest Statute." It premits recovery by a guest only in cases when the accident resulting in injury shall have been intentionally caused by the owner or operator of the motor vehicle, or when it has been caused by his reckless disregard of the rights of others. The statute does not attempt to define the meaning of the phrase "reckless disregard of the rights of others," but does, by such phrase, fix a standard of conduct which, if not observed, will result in liability for damages sustained, without, however, undertaking to apply that standard to any given state of facts, thus leaving the question as to what constitutes a reckless disregard of the rights of others open for determination as a question of fact when the evidence is conflicting, or when different inferences from the evidence may be reasonably drawn. In the instant case each paragraph of the complaint charges specific acts, and a course of conduct on the part of the defendant alleged to be in reckless disregard of the rights of appellee, and the facts averred are, in our opinion, sufficient to state a cause of action. There was no error in the court's ruling on the demurrer. See *Coconower* v. *Stoddard* (1933), 96 Ind. App. 287, 182 N. E. 466; *Runyan* v. *Bland* (1931), 264 Ill. App. 265; *Coner* v. *Chittenden* (1932), 116 Conn. 78, 163 Atl. 472; *Doody* v. *Rogers* (1933), 116 Conn. 713, 164 Atl. 641; *Brandsoy* v. *Bromeland* (1929), 177 Minn. 298, 225 N. W. 162; *Powers* v. *Comerford* (1933), 283 Mass. 589, 186 N. E. 585.

An earnest endeavor is made by appellant to show error in overruling the motion for judgment in his favor on the answers to the interrogatories. It is well settled that in determining whether error was committed in this ruling we consider only the pleadings, the general verdict, interrogatories, and the answers thereto. All reasonable presumption will be

indulged to sustain the general verdict, and unless the answers to the interrogatories disclose facts so inconsistent with the general verdict that they cannot be reconciled with it under any conceivable state of facts provable under the issues, the general verdict must prevail. *Standard Oil Company* v. *Allen, Administrator* (1920), 189 Ind. 398, 126 N. E. 674; *Jeffersonville Mfg. Co.* v. *Holden* (1913), 180 Ind. 301, 102 N. E. 21; *City of South Bend* v. *Turner* (1901), 156 Ind. 418, 60 N. E. 271.

In the instant case the answers to the interrogatories disclose that appellant, at the time he started to pass the truck ahead of him upon the highway, believed he could safely do so; that, thereafter, at the time he turned his automobile into the ditch and immediately before doing so he believed it was dangerous for him to continue on his course along the highway, and that if he did so, he would sideswipe the truck, upset his automobile, with probable serious injury to the occupants thereof, and that the safest course for him to take for the benefit of plaintiff and all occupants of the automobile he was driving was to turn into the ditch. It is to be noted that the answers to interrogatories here considered relate only to what appellant believed at the time when he intended to pass the truck ahead of him and when he turned his car into the ditch. In the case of *Indiana R. Co.* v. *Maurer* (1903), 160 Ind. 25, 27, 25 N. E. 156, our Supreme Court said: "A general verdict will not be defeated by isolated facts disclosed by answers to interrogatories unless such facts are shown to be so repugnant and contradictory to the general verdict that both cannot be true under any conceivable state of facts provable under the issues." Considering the allegations of the complaint and the facts provable under the issues joined, in connection with the fact that the answers to the inter-

rogatories disclosed nothing as to appellant's conduct before or after the particular time concerning which inquiry was made, we conclude that there was no error in overruling appellant's motion for judgment in his favor on the answers to the interrogatories.

Appellant claims error in the giving of instructions numbered 5 and 12, because in each of said instructions the court used the words "mere negligence." It is asserted that by so doing "the jury could have inferred that a recovery could be had for negligence but not for mere negligence," and that there are no degrees of negligence in this state. The word "mere" as defined in Webster's New International Dictionary means "only this and nothing else; nothing more than." There is no merit in the contention made.

Instructions 6, 7, 10 and 13 are challenged on the ground that in neither of said instructions does the court give to the jury a "measuring stick" by which to determine what conduct would constitute a reckless disregard of the rights of appellee. It is true that no one of said instructions attempted to define the meaning of the phrase "reckless disregard of the rights of others," and if these instructions stood alone, there would be just cause for complaint. However, when we look to the entire charge given the jury, we find that the "measuring stick" to be used in determining liability was furnished by the court in other of its instructions. Instruction number 11 is as follows:

"I have said to you that before the plaintiff can recover against the defendant, Armstrong, she must convince you by a preponderance of all the evidence that the conduct of defendant Armstrong, in driving his automobile, was such as to amount to reckless disregard of the rights of plaintiff. It is proper, therefore, for the court to define the term 'reckless disregard of the rights of others.'

"Reckless disregard of the rights of others, as used in the Indiana Guest Statute, means where the

owner or operator of an automobile voluntarily does an improper or wrongful act, or with knowledge of existing conditions, voluntarily refrains from doing a proper and prudent act, under circumstances when his action, or his failure to act, evinces an entire abandonment of any care, and a heedless indifference to results which may follow, and he recklessly takes the chance of an accident happening without intent that an accident may occur."

To the same general effect are instructions 8, 9, and 12, given by the court. In determining whether the giving of any particular instruction or instructions constitute reversible error, the instructions as a whole must be considered with reference to each other, and as an entirety. *Indianapolis, etc., Traction Co.* v. *Roach* (1922), 192 Ind. 384, 135 N. E. 334.

It is also urged that error was committed by the giving of each of the instructions numbered 9, 14, and 17. Instruction number 9 relates to the meaning of the phrase "reckless disregard of the rights of others," and is very similar to instruction number 11, hereinbefore set out. There was no error in giving it. Instruction number 14 informs the jury as to what facts it could take into consideration in determining whether appellant's conduct was in reckless disregard of appellee's rights. It is asserted that under the instruction the jury could have considered all the allegations of the complaint whether proven or not. The instruction is not justly subject to the criticism made. After enumerating the things which the jury could consider in determining the question presented, the instruction continues as follows: "and all other facts, circumstances and surroundings as alleged in the complaint and as proven by a preponderance of the evidence." From this instruction the jury must have understood that in reaching its verdict it could consider only such facts as were alleged in the complaint and proven by

the evidence. Instruction number 17, among other things, told the jury that it "should receive no impressions of this cause from any other source whatsoever, except from the evidence as testified by the witnesses on the witness stand, and produced in the trial of the cause, and the law of this case as given you by the court in these instructions." It is claimed that this instruction precluded the jury from considering certain exhibits admitted in evidence, but we see no reason for this contention. The admitted exhibits were certainly evidence "produced in the trial of the cause," and the jury, under the instruction questioned, certainly should have understood that it had a right to consider all such exhibits together with the testimony of the witnesses.

After reading the entire charge given by the court to the jury we are of the opinion that the jury was fully and fairly instructed. The court in its instructions adhered closely to the law as stated in the case of *Coconower* v. *Stoddard, supra,* and no reversible error in connection with the instructions given is shown.

Appellant also contends that the court erred in refusing to give to the jury a peremptory instruction to return a verdict in his favor, and questions the sufficiency of the evidence to sustain the general verdict, insisting that at the most the evidence shows nothing more than negligence on his part. There is evidence to prove that on the day the accident occurred, appellant, accompanied by appellee, two of her sisters, and another lady, all of whom were his guests, was traveling by automobile from the city of Terre Haute to the home of a niece who resided near Worthington, Indiana, appellant driving the automobile and the guests riding without charge for their transportation. That a part of the journey was over a gravel road, the traveled portion of which was approximately 14 feet in width; that the day was clear, the highway dry,

and that the accident happened in daytime at a place where appellant had an unobstructed view of the highway ahead; that he was familiar with said highway, and had driven over it many times; that as he proceeded along the highway at a speed of from 35 to 45 miles an hour, he approached a truck ahead of him traveling in the same direction which was being driven at a speed of about 40 miles an hour and causing some dust to arise from the highway; that appellant desired to pass said truck and increased his speed for this purpose; that prior to the accident he had, according to his own testimoney, "followed the truck quite a little distance and tried to go around it a time or two before, and the road would narrow down"; that he attempted to pass the truck some 300 feet north of the place where he drove into the ditch at the time he next attempted to pass it; that he was told by one or more of his guests that he was driving too fast, and was requested not to try to pass the truck; that appellee asked him to slow down and let her out; that when one of appellee's sisters said to him "H. D. don't try to go around that truck," he said "now never mind, don't get nervous, I will take care of you"; that when he last attempted to pass the truck, while it was still being driven at approximately 40 miles an hour, he suddenly decided that if he continued on his course along the highway he would sideswipe the truck and cause an accident to happen, thereby endangering the safety of the occupants of the automobile; that without slackening speed he drove into a ditch which extended along the east side of the highway, and continued to drive in and along said ditch for a distance, according to the testimony of some witnesses, of approximately 50 feet, and as testified to by others, 90 to 100 feet; that the ditch at the point where appellant drove into it was a foot or more in depth, and that at a point adjacent to a concrete culvert to the left of

which appellant drove, was 3 feet deep; that there was a wire fence along the ditch, and the automobile struck and tore down 4 or 5 fence posts and was stopped some 20 feet or more south of the culvert. It was then discovered that appellee had been injured and appellant drove his automobile out of the ditch and took appellee and the others back to Terre Haute.

There is conflict in the evidence concerning some of the material facts, but from the facts proven we are of the opinion that the jury might reasonably have reached the conclusion that appellant, despite warnings and requests, with knowledge of the danger involved, persisted in a course of conduct which was in reckless disregard of the rights of his passengers, and which resulted in appellee's injuries. It (the jury) may have concluded that appellant's own conduct created the emergency which he believed existed at the time he drove into the ditch, and that his conduct before and after so doing was reckless conduct, not resulting from momentary inattention or any error of judgment but from a determination to pass the truck ahead of him, however hazardous such action on his part might prove to be. We cannot say as a matter of law that the evidence disclosed by the record shows nothing more than negligent conduct, or that it fails to show a reckless disregard of appellee's rights. These questions were questions of fact for the jury to determine. The following authorities support the conclusion reached. *Coconower* v. *Stoddard, supra; Meyer* v. *Hart* (1929), 110 Conn. 244, 147 Atl. 678; *Coner* v. *Chittenden, supra; Doody* v. *Rogers, supra; Brandsoy* v. *Bromeland, supra; Powers* v. *Comerford, supra; Runyan* v. *Bland, supra; Meeney* v. *Doyle* (1931), 276 Mass. 218, 177 N. E. 6.

The court did not err in overruling the motion for a new trial.

Judgment affirmed.